IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RENE CHANDLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-509 |
| | § | |
| ANDREW SAUL,[1] | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[2] are Defendant's Cross-Motion for Summary Judgment (Doc. 10) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 12). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's cross-motion be **DENIED** and Plaintiff's cross-motion be **GRANTED**.

### I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for

---

[1] Nancy Berryhill was the Acting Commissioner of the Social Security Administration ("SSA") at the time that Plaintiff filed this case but no longer holds that position. Andrew Saul is now Commissioner of the SSA and, as such, is automatically substituted as the defendant in this case. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 2, Ord. Dated Mar. 1, 2018.

supplemental security income ("SSI") under the Social Security Act ("the Act").

## A. Case Background

Plaintiff was born on March 21, 1967, and was forty-two years old on the alleged disability onset date of October 31, 2009.[3] On May 22, 2014, Plaintiff applied for SSI, claiming an inability to work since October 31, 2009, due to a heart problem, fibromyalgia, diabetes, seizures, headaches, pyoderma gangrenosum, anemia, fatigue, short bowel syndrome, and malabsorption syndrome.[4]

In mid-September 2014, the SSA found Plaintiff not disabled at the initial level of review.[5] On September 24, 2014, Plaintiff requested reconsideration of the initial decision.[6] In early December 2014, the SSA again found Plaintiff not disabled upon reconsideration.[7]

On January 21, 2015, Plaintiff requested a hearing before an ALJ.[8] On November 5, 2015, the ALJ granted Plaintiff's request and scheduled the hearing on January 22, 2016.[9] At the hearing,

---

[3] See Doc. 14, Tr. of the Admin. Proceedings ("Tr.") 471-76.
[4] See Tr. 159-60, 471-76, 505.
[5] See Tr. 159-73, 256-60.
[6] See Tr. 261-62.
[7] See Tr. 174-90, 261-67.
[8] See Tr. 268, 271-91.
[9] See Tr. 315-20.

2

Plaintiff, Plaintiff's father, and a vocational expert testified.[10]

On February 18, 2016, the ALJ entered an unfavorable decision.[11] The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date and that her severe impairments were "anxiety disorder, acromioclavicular joint arthropathy, and short bowel syndrome."[12] The ALJ determined that Plaintiff's impairments did not meet any impairment described in the regulations as presumptively disabling ("Listing").[13] The ALJ assessed Plaintiff to have the residual functional capacity ("RFC"):

> to perform light work . . . . Specifically, [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. She can only occasionally walk more than 300 feet. There should be no climbing of ropes or scaffolds, but she can occasionally climb ladders and frequently climb ramps and stairs. She can frequently stoop, kneel, crouch, and crawl. Right overhead reaching is limited to frequent due to . . . acromioclavicular joint arthropathy. She should avoid temperature extremes. [Plaintiff] is limited to frequent interaction with supervisors, coworkers and public. Work should involve only occasional requirement to maintain an assembly line production rate pace and concentration level.[14]

The ALJ found Plaintiff capable of performing her past relevant

---

[10] See Tr. 38-92.

[11] See Tr. 194-207.

[12] Tr. 196 (emphasis omitted); see also Tr. 197-200.

[13] See Tr. 200-02; 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[14] Tr. 202 (emphasis omitted); see also Tr. 202-05.

3

work as well as other work existing in sufficient numbers in the national economy.[15] The ALJ thus concluded that Plaintiff was not disabled.[16] On February 22, 2016, Plaintiff appealed the ALJ's decision.[17]

On May 12, 2016, the Appeals Council vacated the ALJ's decision and returned Plaintiff's case to the ALJ for further action.[18] The Appeals Council found that the ALJ erred: (1) in determining the work that Plaintiff was capable of performing; and (2) in failing to make determinations whether depression was a severe impairment and, if so, whether it met a Listing.[19] Among other directives, the Appeals Council stated:

Upon remand, the [ALJ] will:

Obtain additional evidence concerning [Plaintiff's] medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. The *additional evidence may include, if warranted and available, a consultative examination with psychological testing* and medical source statements about what [Plaintiff] can still do despite the impairments.[20]

The ALJ, who had issued the first decision, scheduled a second

---

[15] See Tr. 200-06.

[16] See Tr. 207.

[17] See Tr. 387.

[18] See Tr. 213-17, 344.

[19] See Tr. 215-16.

[20] Tr. 216 (internal citation omitted)(emphasis added).

4

hearing on October 3, 2016.[21] At the hearing, Plaintiff and a vocational expert testified.[22]

On November 22, 2016, the ALJ entered a second unfavorable decision.[23] The ALJ noted that the case was before him on remand from the Appeals Council and listed its directives.[24] He proceeded to find that Plaintiff had not engaged in substantial gainful activity since the application date but listed a different set of severe impairments: "congestive heart failure . . . , diabetes mellitus, acromioclavicular joint arthropathy, attention deficit disorder, . . . major depressive disorder, and generalized anxiety disorder."[25] The ALJ determined that Plaintiff's impairments did not meet any Listing and that she did not have any past relevant work.[26] However, the ALJ assessed Plaintiff's RFC to be the same as in his first decision with the exception of changing "should avoid temperature extremes" to "must avoid temperature extremes."[27] Based on that RFC, the ALJ found Plaintiff capable of performing other work existing in significant numbers in the national

---

[21] See Tr. 359-64.

[22] See Tr. 93-119.

[23] See Tr. 228-245, 407.

[24] See Tr. 228.

[25] Tr. 231 (emphasis omitted); see also Tr. 232-34.

[26] See Tr. 234-37, 243.

[27] Compare Tr. 202 with Tr. 237.

5

economy.[28] The ALJ thus concluded that Plaintiff was not disabled.[29]

On January 25, 2017, the Appeals Council granted Plaintiff's request for review of the ALJ's second decision and again vacated the ALJ's decision, finding that he had not obtained any additional evidence as directed and did not provided a function-by-function evaluation of Plaintiff's mental RFC.[30] Regarding the former error, the Appeals Council stated:

> By order of the Appeals Council dated May 12, 2016, the [ALJ] was directed to obtain additional evidence concerning [Plaintiff's] medically determinable impairments, in order to complete the administrative record. The Council advised that the additional evidence *might include, if warranted and available, a consultative examination with psychological testing* and medical source statements about what [Plaintiff] can still do despite [her] impairments. Review of the record does not demonstrate that the [ALJ] obtained additional evidence as directed.[31]

Among other directives, the Appeals Council reasserted its prior order in slightly expanded and stronger language:

> Upon remand[,] the [ALJ] will:
>
> Obtain additional evidence concerning [Plaintiff's] medically determinable impairments, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. The additional evidence *should include, if warranted and available, consultative physical and mental examinations with psychological testing[]* and medical source statements about what

---

[28] See Tr. 243-45.

[29] See Tr. 245.

[30] See Tr. 221.

[31] Id. (internal citations omitted)(emphasis added).

6

[Plaintiff] can still do despite impairments.[32]

The Appeals Council remanded the case to a different ALJ than the one who had considered it initially and on the first remand. The new ALJ scheduled a third hearing on August 16, 2017.[33] During the hearing, Plaintiff and a vocational expert testified.[34] At the end of the hearing, Plaintiff's attorney cited the Appeals Council's directive that the ALJ should consider ordering a consultative examination; in response to which, the ALJ asked, "What kind of consultative exam would elaborate on anything other than what's already in the record?"[35] The attorney opined that "it would shed light on some of the issues that were more gray," such as her gastrointestinal problem with absorption of nutrients and her heart issue.[36] The ALJ responded that the reality was the order for a consultative examination would send Plaintiff "to a doc in the box for a five-minute examination" by a doctor who would not read all of her records.[37] The ALJ suggested, instead, that the attorney ask Plaintiff's treating physicians if any would provide an RFC assessment.[38]

---

[32] Tr. 222 (internal citations omitted)(emphasis added).

[33] See Tr. 422-28.

[34] See Tr. 120-58.

[35] Tr. 156.

[36] Tr. 156-57.

[37] Tr. 157.

[38] See id.

7

On September 28, 2017, the second ALJ to review Plaintiff's case also entered an unfavorable decision.[39] The ALJ noted at the start of his decision that the case was on remand from the Appeals Council but did not restate the Appeals Council's directives or mention the remand or the Appeals Council again in the rest of his decision.[40] The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date and that her severe impairments were "attention deficit-hyperactivity disorder . . ., depression, anemia, malabsorption, gastrectomy, and fibromyalgia."[41]

The ALJ found that none of Plaintiff's severe impairments met or medically equaled a Listing and that her RFC allowed her to perform light work with the following additional restrictions: "occasional overhead reaching, . . . never climb ladders, ropes, or scaffolds[,] . . . simple, nonproduction rate pace jobs, with occasional interaction with the public, coworkers and supervisors, and infrequent changes to work procedures."[42] Based on that assessment, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers nationally and therefore

---

[39]  See Tr. 21-30.

[40]  See id.

[41]  Tr. 23.

[42]  Tr. 25 (emphasis omitted); see also Tr. 24, 26-28.

8

was not disabled.[43] In the decision, the ALJ also denied the attorney's request for a consultative examination because "the record adequately provides information on [Plaintiff's] functioning throughout the relevant period."[44] The ALJ noted that Plaintiff had not obtained disability statements from her treating physicians "despite having several prior disability hearings."[45]

On October 12, 2017, Plaintiff appealed the ALJ's decision.[46] On January 17, 2018, the Appeals Council denied Plaintiff's request for review by standard-form letter, thereby transforming the ALJ's decision into the final decision of the Commissioner.[47] After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.[48]

## II. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability insurance benefits. Plaintiff asserts that the ALJ's decision contains multiple errors. However, the court need only address one. The court finds the ALJ's failure to receive additional evidence as directed by the Appeals Council to be an

---

[43] See Tr. 29-30.

[44] Tr. 27.

[45] Id.

[46] See Tr. 470.

[47] See Tr. 1-5.

[48] See id.; Doc. 1, Pl.'s Compl.

9

error requiring remand.

The SSA regulations require the ALJ, on remand, to follow directives issued by the Appeals Council. See 20 C.F.R. § 416.1477(b)("The [ALJ] *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order"). Here, the Appeals Council *ordered* the ALJ to obtain additional evidence on Plaintiff's medically determinable impairments and *suggested* that the new evidence *should include* (if warranted and available) consultative physical and mental examinations with psychological testing, as well as medical source RFC statements. The Appeals Council changed the language of this order from the prior remand by stating that the additional evidence *should include* rather than *may include* a consultative examination and RFC statements.

The ALJ did not obtain any additional evidence. The ALJ did not even mention the order or explain why he did not comply with the order. Rather, the ALJ offered an explanation at the hearing and in his decision for not ordering a consultative examination and placed the onus on Plaintiff to obtain medical source RFC statements to Plaintiff. In doing so, the ALJ addressed only the suggestions of the Appeals Council wholly failing to address, much less comply, with the overarching directive to obtain additional evidence for the purpose of completing the administrative record on Plaintiff's physical and mental impairments.

10

Several years ago, the Fifth Circuit suggested, in an unpublished opinion, that failure to comply with an Appeals Council's order may not constitute reversible error. See Henderson v. Colvin, 520 F. App'x 268, 273 (5th Cir. 2013)(unpublished). There, the Fifth Circuit opted not to follow the out-of-circuit district courts cited by the plaintiff, which held that failure to comply with the Appeals Council's orders was reversible error, stating, "the clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or the decision is not supported by substantial evidence." Id. Nevertheless, the Fifth Circuit concluded that the ALJ had complied with the Appeals Council's directive. See id. The difference in the case presently before this court is that the ALJ not only committed a procedural error of not following SSA regulations, but, in failing to obtain additional evidence, the ALJ also committed the legal error of failing to fully and fairly develop the record.

"An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits." Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000); see also 20 C.F.R. § 416.912 (stating that the SSA has the responsibility to develop a complete medical history before making a determination that the claimant is not disabled); 20 C.F.R. § 416.917 (stating that, if the medical sources are not able to provide sufficient medical evidence for a determination of disability, the SSA will

request a consultative examination). When a plaintiff can establish prejudice by showing that she "could and would have adduced evidence that *might* have altered the result," the court may reverse and remand the ALJ's decision for failure to develop the record. Id. (emphasis added). That is the case here.

The record in this case is thinner than its volume appears because of the number of years it covers. Throughout the relevant period, Plaintiff's condition changed, mostly for the worst, and she received additional diagnoses. The origins of all of Plaintiff's diagnoses are difficult to ascertain. The record is also confusing with regard to Plaintiff's waning capability. The record does not contain adequate evidence to make an accurate assessment of Plaintiff's impairments and her limitations.[49] This is most clearly illustrated by the three, varied ALJ decisions issued in a span of slightly more than a year and a half. Based on the differences in the ALJs' lists of severe impairments, the three decisions easily could have been about three different people. The first decision listed three impairments, two which made it into the second decision where they were joined by four other severe impairments. The third decision lists one of the two from the first two decisions, another from the second decision, and five more severe impairments. That is a total of eleven widely varied

---

[49] The Appeals Council made it clear that it was also concerned about the completeness of the record. In fact, it stated that as the reason it was ordering the ALJ to obtain additional evidence. See Tr. 222 ("Obtain additional evidence . . . in order to complete the administrative record.").

12

physical and mental severe impairments on review of essentially the same evidence. The first ALJ's RFC assessment remained mostly the same over his two decisions, but the third decision offered an RFC with noticeably different limitations than in the first two.

Plaintiff's attorney proffered that a consultative examination would help explain the malabsorption and heart issues and, presumably, the limitations they caused. Plaintiff suggests in her brief that additional medical evidence would lend credence to her subjective statements regarding her limitations. Given the current state of the record, the court agrees that additional evidence may alter the result by associating Plaintiff's alleged limitations to her medical diagnoses.

Plaintiff requests that the court reverse and render benefits. this is not an appropriate case for rendering benefits because the record needs to be completed.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's cross-motion be **DENIED** and Plaintiff's cross-motion be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of August, 2019.

Nancy K. Johnson
United States Magistrate Judge